# GEORGE W. FITCH

*v.*

# JARED D. CONYNE.

1. RESCISSION OF EXECUTED CONTRACT—*effect on title.* Where the grantee of a ferry franchise, upon the delivery to him of his note given for the purchase price, surrendered his deed, which was unrecorded, the intention being to rescind the sale and conveyance: *Held*, that while the surrender of such deed did not restore the legal title to the grantor, yet in equity the contract was rescinded.

2. SAME—*estoppel.* And where such surrender was procured by sureties of the grantor, so that the franchise might be subject to execution against them and the grantor: *Held*, that such sureties, and all persons claiming through them with notice, were estopped to deny that such conveyance was rescinded.

3. SAME—*ratification—what is.* Where a party had conveyed a ferry franchise, taking a note for the price, payable to his wife, and, becoming involved, had left the country; and his securities, with his father, who held the note, procured a rescission of the contract with the grantee, by delivering up such note to the grantee, and the latter surrendering his unrecorded deed, intending thereby to restore the franchise to the grantor, and such grantor afterwards gave a power of attorney to convey the franchise for him, which was done: *Held*, that the giving of the power of attorney was a ratification of the rescission of the contract.

4. SAME—*specific performance in equity.* Where parties to a conveyance of a ferry franchise mutually surrendered and delivered up the deed by the one, and the consideration received by the other, intending thereby to rescind the sale and conveyance, and the grantor, through an agent under power of attorney, sold and conveyed the same for a valuable consideration, the conveyance being duly recorded; and the grantee afterwards, for no consideration, conveyed the legal title in him to the defendant: *Held*, on bill in equity by the purchaser under the power of attorney, that the latter was entitled to have the last conveyance set aside and declared void, and that in equity, after such rescission, the first grantee could be compelled to re-convey the legal title.

APPEAL from the Circuit Court of Whiteside county; the Hon. WILLIAM W. HEATON, Judge, presiding.

Messrs. WILSON, SACKETT & BEAN, for the appellant.

Mr. O. F. WOODRUFF, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The object of the bill in this case was to have a certain quit-claim deed, executed by Thomas K. Irwin to John Whalon for a ferry franchise, declared null and void, and to enjoin the clerk of Whiteside county from issuing a ferry license to the appellant under or by virtue of any action had by the board of supervisors, at the April term, 1870, and for general relief in the premises.

The circuit court decreed the specific relief prayed for, and to reverse that decree the appellant prosecutes this appeal.

Both parties claim the franchise in question, under title acquired by Alfred B. Campbell. It is conceded that Campbell did own the franchise, and that on the 14th of January, 1870, he sold and conveyed it by deed to Thomas K. Irwin, in consideration of which he executed his note to Mary Campbell for $300. The title thus conveyed to Irwin was, by means of certain conveyances, vested in the appellant. The question in the case is, whether the title was fairly obtained, and whether it ought to prevail against the equitable title of the appellee.

The history of the case may be briefly given: It appears that Smith & Scotchbrook were sureties for Alfred B. Campbell on a certain replevin bond. The suit having terminated adversely to Campbell, they became liable for quite an amount of costs. Campbell had left the country—at least his place of residence was not known—and Smith & Scotchbrook became anxious to secure themselves against loss. For this purpose, they went to see Alanson Campbell, who was the father, and perhaps the agent, of Alfred. He told them that he had nothing to secure them with except Irwin's note of $300 to Mary Campbell. This he turned out to them. But upon inquiry, finding they could not use the note to advantage, they returned it. It was then agreed that Smith and Alanson Campbell should go to Irwin to make some arrangement to get the ferry itself, to secure Smith & Scotchbrook.

It is insisted by appellant that the arrangement then made with Irwin was that Smith & Scotchbrook became the owners of the ferry, which they subsequently sold to Whalon, in consideration that he would pay the amount for which they were security, and that Whalon afterwards conveyed to him. On the other hand, the appellee insists that the legal effect of the arrangement then made was simply a rescission of the contract between Irwin and Alfred B. Campbell, so that the ferry would go back to him and be liable for the costs for which Smith & Scotchbrook were bound. We think the latter theory is the best sustained by the evidence. At the interview between Irwin, and Smith and Campbell, it was agreed that in consideration that Alanson Campbell would deliver up his note made to Mary Campbell for the purchase money of the ferry, he (Irwin) would surrender the deed made to him by Alfred, which was accordingly done.

We think the evidence shows that it was the intention of the parties to that transaction to rescind the contract, and nothing more. Irwin says it was "simply a trade back." Certainly the weight of the evidence is to that effect. This view is strengthened by the fact that all that Smith & Scotchbrook wanted, in the first place, was to be made secure. If the contract was rescinded, the property would be liable to the execution for the debt for which they were sureties. It was of sufficient value to afford ample security.

The mere fact that Irwin surrendered his unrecorded deed, did not restore the legal title to Alfred B. Campbell. In equity, however, the contract was rescinded, and Smith & Scotchbrook, and all persons claiming through them with notice, would be estopped to deny that it was rescinded, when it was done at their instance.

It does not appear from the evidence that Alfred B. Campbell had previously given any authority, to any one, to rescind the contract; but after it was done, he made a power of attorney to Anderson to convey the franchise for him, which was a ratification of the rescission of the contract. On the 21st

day of February, 1870, Anderson, by virtue of the power of attorney from Campbell, conveyed the franchise by deed to Mrs. Maning, she having first paid the debt for which Smith & Scotchbrook were liable as securities, and that title, through several conveyances, passed to the appellee before the present suit was instituted, and is made the basis for the relief sought.

On the 22d day of February, 1870, one day after Mrs. Maning's deed was made and filed for record, Whalon went to Irwin, and represented to him that he was the owner of the ferry property; that he had paid the debt for which Smith & Scotchbrook were liable, and induced Irwin, under the belief that he was the real owner, to execute to him a quit-claim deed for it. The appellant now insists that the legal title so acquired by him shall prevail over the equitable title of appellee.

There are no innocent purchasers on either side to be affected by this transaction. All parties, unless it was Mrs. Maning, had notice of what was being done when the several transfers were made. It is simply a question as to who has the prior equities, and which shall prevail.

In view of the evidence, we think that Smith and all parties claiming under him, as grantees from him or Irwin, are estopped in equity to deny that the contract was in fact rescinded, although the legal title still remained in Irwin. Undoubtedly, Alfred Campbell could have compelled Irwin to execute to him a conveyance. He had received back the consideration, and he was, in equity, bound to re-convey. This fact was known to Whalon. Irwin expressly told him that he had rescinded the contract with Campbell, and had no title to convey to him. He knew, or could have known by examining the record, that Alfred Campbell had acquiesced in the rescission of the contract, for he had then, by his attorney in fact, conveyed the franchise to Mrs. Maning, and her deed was on record. Whalon paid no consideration whatever to Irwin for the deed, and if he paid the costs for which Smith & Scotchbrook were liable, he paid them after they had

been paid by Mrs. Maning. It was part of the contract that Mrs. Maning should pay the costs, and she paid them, at the request of Campbell, as part consideration for the franchise purchased of him.

After Smith had procured the rescission of the contract, Whalon, as a purchaser from him with notice, could not purchase the legal title from Irwin, and hold it as against the title of the assignee of Alfred Campbell. It would be inequitable to allow him to do so.

In no aspect of the case does it appear that Whalon acted in good faith in procuring the deed from Irwin. It was in fraud of the rights of the assignee of Campbell, and the court decreed correctly in declaring it void and of no effect.

It will not be necessary to inquire whether the license to appellant was granted by the board of supervisors in contravention of the statute. The appellee was the equitable owner of the ferry franchise, and the court could properly decree that he should enjoy it without any interference from the appellant, and this seems to be the extent of the decree.

Perceiving no error in the record, the decree is affirmed.

*Decree affirmed.*